## Case No. 5,994.

### In re HAMLIN et al.

[8 Biss. 122; 16 N. B. R. 522; 10 Chi. Leg. News, 131.] [1]

District Court, N. D. Illinois. Dec. 17, 1877.

FRAUDULENT COMPOSITION — WHO MAY AVOID — VEXATIOUS PROCEEDINGS — RIGHT TO DISMISS — PREFERENCE TO CREDITOR — WHEN MUST BE SET ASIDE — STATUTE OF LIMITATIONS.

1. Where the debts against a partnership have been compromised and the firm dissolved, one of the partners has no right afterwards to put the firm into bankruptcy upon allegations of his own fraud in effecting the composition.

2. A composition with creditors fair upon its face, but in fact fraudulent as to part of them, can be set aside only by the creditors who are wronged. The debtor cannot be heard to assert his own fraud as a reason for setting aside such settlement.

3. Where it appears that a petition in bankruptcy has been filed by one member of a firm solely for the purpose of vexing and harassing the other partner, the court has power to dismiss the proceedings.
[Cited in Allen v. Thompson, 10 Fed. 124.]

4. A preference to a creditor cannot be set aside unless an adjudication in bankruptcy is had within the time limited by the bankrupt act [of 1867 (14 Stat. 517)].

5. The rule of the Illinois statute of limitations that the limitation does not begin to run till the fraud is discovered has no application to such case.

Petition by Hamlin for adjudication of the firm of Hamlin, Hale & Co., composed of petitioner and R. W. Hale, filed April 13, 1877. Answer of Hale to rule to show cause, filed June 21, 1877, contains general denial, and a special motion, upon affidavits filed, to dismiss proceeding as to said firm because

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. Statement and briefs from 16 N. B. R. 522.]

it is instituted not in good faith for the benefit of creditors, or to obtain a discharge, but for private and malicious purposes of petitioner.

Affidavit of Hale states that his said firm has not existed since 1871, and all of its debts were paid about five years before this petition was filed, under a composition deed at fifty cents on the dollar, executed by all the creditors November 1, 1871, which composition was effected by Hamlin personally, and was obtained and carried out in good faith, unless Hamlin himself committed some fraud respecting it hitherto kept secret from all concerned. That the debts of Hamlin, Hale & Co., scheduled by petitioner, are solely the fifty per cent. thrown off in the aforesaid composition, which settlement Hamlin now seeks to nullify in order to make out his old firm to be insolvent. That Hamlin, before filing this petition, threatened H. B. Claflin & Co., of New York, that if they did not loan him fifteen thousand dollars he would break up said composition, and cause them to be sued for a pretended illegal preference obtained by them under it from Hamlin, Hale & Co. That Hamlin then went to said creditors, and by misrepresentations that he merely desired to remedy, for the benefit of his firm, a technical defect in said composition, obtained the signatures of most of them to an assignment to his, Hamlin's, father, of any claim they might have against Hamlin, Hale & Co. That Hamlin thereupon filed this petition, setting forth as creditors of his said firm the said former creditors (without mentioning the composition or the assignments to his father), and setting forth as assets certain unsettled claims against insurance companies and claims for goods sold, and a claim against H. B. Claflin & Co. for an undetermined amount. That all the firm assets had in fact been assigned by Hamlin to Hale, and a full settlement made between said partners, and Hale had sold all said assets some two years ago. That there was no valid claim against H. B. Claflin & Co., and the last-mentioned firm had in fact lost by Hamlin, Hale & Co. a larger percentage than any other creditor. Respondent, Hale, also filed the affidavit of W. S. Dunn, a member of the firm of H. B. Claflin & Co., corroborating Hale's statements, and the affidavits of twenty-two creditors corroborating his statement as to the misrepresentations by which Hamlin obtained the assignments to his father.

In reply to Hale, the petitioner filed his affidavit, setting forth that he, Hamlin, did effect the composition, but at the direction of H. B. Claflin & Co. he misrepresented the assets and liabilities of his firm, and its liabilities to Claflin & Co., with the object of saving a large amount and paying it as a preference to said last-named firm, and that said amount was paid in fraud of the rights of the other creditors under the composition, and that Hale was privy thereto. That

it was true he had obtained an assignment to his father of said claims by such creditors as would execute it, and his father had, a month after the petition was filed, assigned said claims to a trustee to pay the individual debts of petitioner. Petitioner denied having applied to H. B. Claflin & Co. for money, or having made any threats, but he did not deny the allegations as to the means by which he obtained the assignments to his father. It further appeared that, upon the dissolution of the firm sought to be adjudicated herein, a new firm of the same name, but with two new members, had been formed, and continued until November, 1873, when all the partners except Hamlin retired, and Hamlin organized the firm of Hamlin, Davey & Co., which continued several months longer, and that during all this time no objection had ever been made by Hamlin or any one else to the validity of said composition until the filing of this petition. It further appeared, by affidavits and papers filed, that since this petition was filed nearly all the alleged creditors had signed a paper ratifying and confirming said composition, notwithstanding the charges of Hamlin.

A. S. Bradley and H. H. Thomas, for respondent Hale.

This court, sitting in bankruptcy, has full equitable powers over a case—the same as have been exercised in the English courts—derived by construction from the acts of congress. Rev. St. §§ 503, 711, 4972; Morris' Estate [Case No. 9,825]; Ex parte Christy, 3 How. [44 U. S.] 292. The proceedings in the bankruptcy case proper are in equity, although, by special provision of section 566, a particular issue tried by jury is substantially a common law proceeding. Bump, Bankr. § 4972; In re Schuyler [Case No. 12,494]; In re Wallace [Id. 17,094]. If it appears that a proceeding in bankruptcy was instituted for purposes, or mainly for purposes, foreign to the legitimate object of the bankrupt law, the court will supersede it. Amsinck v. Bean, 22 Wall. [89 U. S.] 395; Robs. Bankr. p. 610, and cases cited; Ex parte Bourne, 2 Glyn & J. 137; Ex parte Harcourt, 2 Rose, 203; Ex parte Phipps, 3 Mont., D. & D. 505; In re Davies, 3 Ch. Div. 461. The interference by several state courts, enjoining the prosecution of proceedings in bankruptcy for inequitable purposes, shows that the necessity of enforcing the above doctrine exists in this country. In the English cases cited above, the moving parties appeared in a less inequitable position than Hamlin, for they were merely seeking ends which might have been legitimately prosecuted by other means, while this petitioner admits that the whole foundation of his proceeding is his own fraud, and that he has obtained control of the fund sought to be recovered, and he does not deny the charge that he also obtained this control by fraud.

Leonard Swett, Robert Hervey, and L. H. Bisbee, for petitioner, argued that the proceeding was one of strict right, in which creditors had an interest, and that this court has not the discretionary power exercised in England.

Wirt Dexter, for respondent.

1. The original composition deed, being under seal, and not impeached by creditors, Hale is entitled to the benefit of it, and it cannot be collaterally attacked by Hamlin by reason of his own fraud in effecting it. The composition has already been twice ratified by the creditors, who alone could impeach it.

2. Hamlin got control of the assets as a trustee for his firm, and it would be a fraud on his firm, or the firm creditors, to cause the assets to be assigned for the benefit of his individual creditors.

3. Even if the individual creditors obtained title to a claim against Claflin & Co., the statute of limitations would bar any recovery by them, because they would be affected by Hamlin's knowledge of any fraud in the composition.

4. This is a proceeding under the bankruptcy statute, and the statute itself invalidates only those preferences which were obtained within four months of the filing of the petition.

BLODGETT, District Judge. In this case F. N. Hamlin on the 13th of April, 1877, filed his petition on behalf of Hamlin, Hale & Co., asking that the said firm be adjudicated bankrupts. The petition was in the usual form, setting out that the firm of Hamlin, Hale & Co. was insolvent, that it consisted of F. N. Hamlin and Robert W. Hale, and that they asked the benefit of the bankrupt act, that they were willing to surrender all their property, and asked that on doing so they might be discharged from their debts. On the 14th of May, on a petition filed in behalf of Hamlin by one of his attorneys, a rule was entered that Hale, the partner who had not joined in the petition, should show cause in five days after service, why he and the firm of Hamlin, Hale & Co. should not be adjudged bankrupts.

This rule was returned served, and in the due course of procedure Hale made his answer, denying that the firm of Hamlin, Hale & Co. was insolvent, and denying that he, Hale, was insolvent, and asking that the issue made by his denial might be tried by a jury. At the same time that Hale filed his denial, he also, by leave of court, entered a motion to discharge the rule and dismiss the petition as against himself.

Several reasons were assigned in support of this motion; but I only deem it necessary to consider one, viz.: that the said petition, so far as it asks for an adjudication of the firm of Hamlin, Hale & Co., is a fraudulent attempt on the part of Hamlin, to use the process and jurisdiction of this court for the

purpose of annoying and vexing the respondent Hale, and to gratify Hamlin's feelings of revenge and spite against Hale.

The undisputed facts involved in this controversy, as shown by the pleadings and affidavits on file, appear to be these:

For sometime prior to the great fire of 1871, F. N. Hamlin and Robert W. Hale, had been doing business as wholesale and retail dry goods merchants in this city, under the firm name of Hamlin, Hale & Co. Their losses by the fire were very considerable, and in the month of November, 1871, they represented themselves to their creditors as insolvent and unable to pay their debts in full. From representations made to their creditors in regard to the extent of their losses by the fire, and their liabilities and assets, their creditors agreed to accept a composition of fifty cents on the dollar on the par value of their debts, and all signed a composition deed to that effect, and the promissory notes of the firm for the commuted amount of their debts to their several creditors were duly executed and delivered, payable in six and twelve months from the first day of November, 1871. This settlement with their creditors was wholly negotiated by Hamlin, and the representations to the creditors by which it was obtained, were all made by him. In January, 1872, the old firm of Hamlin, Hale & Co. was dissolved, and a new firm organized, under the same name, to continue the business, by bringing in two new partners, which new firm continued until November, 1873, when it was dissolved, the two new partners and Hale retiring from the business, and Hamlin organizing a new firm, under the firm name of Hamlin, Davey & Co. All the composition notes and other indebtedness of the old firm of Hamlin, Hale & Co. had been paid long before the dissolution of Hamlin, Hale & Co. in November, 1873, and no creditors of the firm have since sought to set aside or avoid the composition settlement of November, 1871.

Hamlin schedules as the only assets of the firm of Hamlin, Hale & Co.—First, "a claim against H. B. Claflin & Co., amount undetermined;" second—"claims against certain insurance companies that are in liquidation arising from losses by fire of October, 1871, for goods burned in the store of Hamlin, Hale & Co., amount unknown;" third—"certain book accounts due the firm of Hamlin, Hale & Co., the items of which I am unable to state (the books being in the possession of Robert W. Hale)."

The statement of Hamlin in regard to the claim scheduled against H. B. Claflin & Co. is, in substance, this: that when the old firm of Hamlin, Hale & Co. failed in the fall of 1871, and sought a compromise with their creditors, they owed the firm of H. B. Claflin & Co. about $870,000 and all other persons about $600,000; that Hamlin having the charge of the financial affairs of his firm, and being the sole partner engaged in negotiating said compromise, as he says, by Claflin's direction, represented the assets of the firm of Hamlin, Hale & Co., at about $350,000 less than they actually were, and represented the firm liabilities to H. B. Claflin & Co., at $350,000 less than they were. The object of this was to enable the firm of Hamlin, Hale & Co., to save $350,000, so as to be able to pay it to H. B. Claflin & Co., and accordingly, wrongfully, but at the direction of Claflin, said false representations were made, and about the amount of $350,000 was saved from the assets of the firm and paid to the firm of H. B. Claflin & Co., in fraud of the rights of the other creditors. This is Mr. Hamlin's statement taken verbatim from his rejoinder, as it is called, to Hale's denial.

It also appears that in the spring of 1874 Hamlin assigned to Hale all his interest in the notes and accounts of the old firm of Hamlin, Hale & Co., and that said assignment remains in full force.

It further appears that shortly before the filing of this petition in bankruptcy, and within the past year, Hamlin has, without consideration, obtained from nearly all the creditors of Hamlin, Hale & Co. named in the schedule filed with this petition, an assignment of the claims of said creditors for the fifty per cent. thrown off at the time of said composition, to Hamlin's father, who now holds the same under some pretended trust for the benefit of Hamlin's creditors.

It also appears that since this petition was filed, a large proportion of said creditors have signed papers, stating, in substance, that after learning of the statement of Hamlin as to the alleged fraudulent character of the composition of 1871, they are still willing and wish to ratify and confirm the same by signing the said paper, while many other creditors have filed affidavits stating that Hamlin obtained said assignments under the pretext that they were to be made for the benefit of the firm of Hamlin, Hale & Co., and for the purpose of legalizing their composition and curing any technical defects in it.

A careful perusal of the papers filed in the case leaves no doubt in my mind that the real controversy in this case is over the alleged claim of the old firm of Hamlin, Hale & Co. against H. B. Claflin & Co., growing out of the settlement; and that there were no debts of the firm of Hamlin, Hale & Co. at the time this petition was filed, unless the old creditors who settled with the firm in the fall of 1871, at fifty cents on the dollar should set aside that settlement on the ground of the fraud alleged to have been practiced upon them by Hamlin, as he alleges, at the instance and for the benefit of Claflin.

We have, then, this statement of the case: Hamlin alleges that a fraudulent settlement was made in November, 1871, between the

firm of Hamlin, Hale & Co. and their cred-itors at fifty cents on the dollar. This settle-ment was fair on its face, and is only void-able by the creditors at their election. No creditors have so far challenged this settle-ment, and no steps have been taken of any character to set it aside.

Upon the facts appearing in the case, can the firm of Hamlin, Hale & Co. be said to owe debts? Legally, these debts are all set-tled and discharged by the deed of composi-tion and the payment of the composition notes, and it is, at least, extremely doubtful whether the act of Hamlin can revive these debts as against his firm, and he demand that the firm be adjudged bankrupt by rea-son of his awakened conscience as to the fraud perpetrated by him, no matter at whose instance. The question is, can Ham-lin be heard in a court of justice to assert his own turpitude as a reason why this court should take jurisdiction of this matter, and treat the firm of Hamlin, Hale & Co. as still owing debts? Aside from this, we have the fact that so large a proportion of the creditors, after being fully informed of Hamlin's state-ments that they had been defrauded, have ratified and confirmed the composition, and no creditor is now in this court asking that an adjudication against this firm be had; but, on the contrary, the only person who is press-ing this case for adjudication is the peti-tioner, Hamlin, who has obtained the trans-fer, to his father for his own benefit, of so large a proportion of the debts, which he proposes to revive against his firm by procla-mation of his own fraud. But if the objec-tion above urged to the further progress of this proceeding is not sufficient, it seems to me that the position assumed that this pro-ceeding is carried on by Mr. Hamlin solely for the purpose of harassing his late partner, is abundantly shown by the proofs.

Hamlin had, before he filed this petition, obtained the assignment, without considera-tion, of a large part of these claims to his father, and they are now held, as he says, for the benefit of his, Hamlin's creditors. This assignment, so procured by Hamlin, must enure to the benefit of the firm, so that we have the spectacle of Mr. Hamlin holding most of the claims against his firm, which he has obtained to be assigned without con-sideration, seeking to have his firm adjudged bankrupt on claims which he now holds un-der circumstances which would prevent even the father, as trustee, from proving a claim in bankruptcy against the firm, because he could, under the admitted facts in this case, hardly swear, in making his proofs, that the "said claims were not procured for the pur-pose of influencing proceedings in bankrupt-cy." Every lawyer knows that no claim can be proven in bankruptcy unless this proof is made; and it seems to me very evident that, on all the facts in this case, the court must assume that these claims were obtained with the intent to prosecute and influence proceed-ings in bankruptcy, such as the election of an assignee in the interest of Hamlin.

The proof is conclusive that a bitter feud exists between Hamlin and Hale, and this fact, taken in connection with Hamlin's ac-tion, and direct agency in obtaining the transfer of these compromised claims to his father, and his further statement in his re-joinder to Hale's denial, that he has filed this petition in order that all the facts in regard to the alleged Claflin preference might be brought out, shows to my mind that this petition is not filed in good faith by Hamlin, for the benefit of the creditors of the firm of Hamlin, Hale & Co., and with the intent to surrender the property of the firm, for the benefit of such creditors; but, on the con-trary, is solely for the purpose of vexing and harassing Hale and perhaps Claflin & Co., through the process and proceedings of this court, and making gain for Hamlin.

That a court, when it is satisfied its process is being abused and used for sinister, op-pressive and vexatious purposes, has power to dismiss the proceeding is fully sustained by the following authorities: Amsinck v. Bean, 22 Wall. [89 U. S.] 404. So in Morris' Estate [Case No. 9,825], Hopkinson, J., says: "The judge to whom the power is given to issue the commission has also the power to recall it, if, instead of answering the purposes for which it was issued, it is used as an instru-ment of fraud and oppression."

In Ecfort v. Greely [Id. 4,260], Judge Krekel says that when bad faith appears to be ac-tuating petitioners, "the court will not be slow in ordering them not to come here with-out clean hands."

The same rule was applied in this court in Re Scammon [Id. 12,429], where this court dismissed the petitioner summarily, on mo-tion, on the ground that the petition had not been filed in good faith. The district courts, sitting as courts of bankruptcy, are clothed with all the powers of courts of equity to accomplish the purposes essential to the just operation of the system. Ex parte Christy, 3 How. [44 U. S.] 312. So, too, the English chan-cellors have never hesitated to dismiss cases when satisfied they were brought with the intent to abuse the process of the court or with the purpose of oppressing and vexing the respondents. Robs. Bankr. 610; Ex parte Bourne, 2 Glyn & J. 137; Ex parte Harcourt, 2 Rose, 203; Ex parte Gallimore, Id. 424; Ex parte Phipps, 3 Mont., D. & D. 505; Ex parte Ashworth, 18 L. R. Eq. 705; In re Davies, 3 Ch. Div. 461.

It seems to me, then, that upon the admit-ted facts in this case, the rule against Hale should be discharged. It cannot be said that this firm owes legal debts at this time; for, admitting the frauds upon the creditors alleged by Mr. Hamlin, still no one but the wronged creditors themselves could take ad-vantage of those frauds.

It strikes me, a fair way to test this propo-sition would be to ask if Mr. Hamlin, by

going to one of these creditors and voluntarily paying him the fifty per cent. on the old debt which was thrown off in the composition of 1871, could maintain a suit at law, or in any other form of action, against Hale for contribution. If he could not do that, he certainly cannot revive the old debt as against the firm, and force the firm into bankruptcy. I therefore think this court justified in finding that this proceeding is not prosecuted in good faith; that it is an attempt to abuse the process of this court, which should not be sanctioned or tolerated.

It might also be asked, what is to be gained, so far as the alleged Claflin preference is concerned, by putting this firm into bankruptcy? It was, at most, as far as other creditors are concerned, a preference which could only be set aside in bankruptcy when an adjudication takes place within four or six months from the time the preference is taken. This preference, if taken at all, was taken five and a half years before the petition in this case was filed. It is not denied but that Hamlin, Hale & Co. owed Claflin & Co. all the money paid them; but it is claimed they were paid more than the other creditors. This would make the settlement voidable at common law, as between the debtors and creditors, but it does not give the creditors so defrauded a right of action against Claflin & Co., so that the only right of action which could be maintained in behalf of creditors would be, under the bankruptcy law, if an adjudication had been had against the firm of Hamlin, Hale & Co., within six months after the preference was taken.

Upon the argument of the case it was urged that the limitation did not apply nor begin to run till the preference was discovered, but from a number of cases I have examined, I am of opinion that this rule of the Illinois statute of limitations does not apply to proceedings under the bankrupt law, and that creditors are obliged to be vigilant in ascertaining whether other creditors have been given a preference or not, and if they do not ascertain that fact within the limited time fixed by the bankrupt law, the preference will stand.

The rule is therefore discharged.